[No. 22007.   Department Two.   November 19, 1929.]

MATILDA A. FALK, *Respondent*, v. F. L. GREEN, *Appellant*, N. J. NYQUIST *et al., Respondents.*[1]

*Schwellenbach, Merrick & Macfarlane,* for appellant.

*John J. Sullivan* and *Thos. E. Geraghty,* for respondent Falk.

*J. A. Rokes,* for respondents Nyquist.

MAIN, J.—This action was brought to partition a tract of land owned by the plaintiff and the defendants as tenants in common. The defendant F. L. Green resisted the action, but said that, if anything was done, the land should be sold and the proceeds divided. The court first tried out the question as to whether the land was subject to partition, and held that it was. Thereupon three referees were appointed to make the division. In due course of time, they made a report, to which the parties filed exceptions, and it was rejected. Subsequently they made another report, to which Green filed exceptions, and the matter came on

[1]Reported in 282 Pac. 212.

for hearing before the court. Judgment was entered sustaining this report of the referees and dividing the property in accordance therewith, from which Green appeals.

The facts are these: In 1914 Peter Falk, the respondents N. J. Nyquist and wife, and the appellant F. L. Green purchased a tract of land sixteen or seventeen miles south of the city of Seattle and which bordered on the east shore of Puget sound. Mr. Falk subsequently died, and Matilda A. Falk, his widow, one of the respondents, succeeded to his interest in the property. The east boundary of the land partitioned was 229.50 feet long, the southern boundary 189 feet, and the northern line 165.44 feet. In front of the property the shore line recedes from south to north. A ridge or hill extends diagonally across the tract forming a level or plateau like surface on the eastern side. At the south end of the tract, this plateau is approximately ninety feet wide, and at the north end, is sixteen or seventeen feet. Some years ago the respondents constructed an inexpensive frame structure on the northern portion of the tract. They invited Green to join with them in the construction, but he declined. The property was adapted for use as summer homes. In 1926, Green, without the consent of the other tenants in common and without knowledge on the part of one of them, constructed, near the southeast corner of the tract, a substantial two-story house at a cost of about $5,000. To the south of the tract, was a strip forty-five feet wide, which for many years had been used as a roadway, but had never formally been laid out as such. The first report of the referees included this strip in the land partitioned, and that was the reason that that report was rejected.

The appellant first says that the land should not have been partitioned, but should have been sold

and the proceeds divided. Before the appellant could successfully object to the partition, it was necessary for him to show that great prejudice would result to him from dividing the property. In *Williamson Investment Co. v. Williamson*, 96 Wash. 529, 165 Pac. 385, after a thorough consideration of the question, it was said:

"Since, by the statute itself, the power of the court to order a sale is conditioned upon a showing that great prejudice would result from a division, there is a presumption that land held in common can be equitably divided according to the interests of the parties, measured by value. The burden of proof to show great prejudice, therefore, rests upon him who asserts it." (Citing authorities.)

The evidence in this case fails to show that prejudice would result to the appellant in a division of the property. The trial court properly ordered a division of it.

The appellant next objects to the division as made. By the referees' report, the respondent Mrs. Falk was given the northerly 76½ feet, the appellant Green the southerly 76½ feet and the respondents Nyquist and wife the central 76½ feet. Green was required to pay $510 to Mrs. Falk and $510 to Mr. and Mrs. Nyquist. A strip fifteen feet in width along the easterly line of the lot or tract was reserved for ingress and egress of the parties, in order that they might reach the highway to the south. It was the opinion of the referees that the appellant had received the most valuable portion of the tract, and that the $510 which was payable to each of the other parties and the easement for egress and ingress would equalize the values. The trial court, as already indicated, sustained this report. The appellant points out certain differences between the first report of the referees

and the second, and from this draws the conclusion that the second report was not correct and the court was in error in sustaining it. It must be remembered that the first report was based upon an entirely different theory than that of the second, because it included the strip forty feet wide at the south which was used as a roadway. Whatever discrepancies there may be between the first report and the second, they are not such as would justify this court in reversing the judgment of the trial court and overturning the report of the referees. That court and the referees were in much better position to determine the just and proper division of the property than are we. After considering all the evidence and the two reports, we are of the opinion that a just and proper division of the property was made.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.